IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

MATTHEW HENSLEY, )
)
        Petitioner, )
)
v. ) Case No. 06-3092-CV-S-ODS
)
DAVID DORMIRE, )
)
        Respondent. )

**ORDER AND OPINION DENYING PETITION FOR WRIT OF HABEAS CORPUS**

     Petitioner was convicted on two counts of second degree murder and two counts of armed criminal action. His convictions were affirmed on direct review. State v. Hensley, 83 S.W.3d 681 (Mo. Ct. App. 2002). He filed a motion for postconviction relief, which was denied; the denial was affirmed on appeal. He then timely filed his Petition for Writ of Habeas Corpus. His request is denied.

I. BACKGROUND

     Charges against Petitioner arose from the shooting deaths of two individuals (Roy Cotter and Jarret Turner) in Petitioner's home. Petitioner initially professed having no knowledge of the deaths. Later, he told investigators he shot Cotter and Turner because he thought they were going to kill him.[1] At trial, Petitioner testified that another person (Ray Smith) shot Cotter and Turner. In addition to Petitioner's confession, evidence supporting the convictions included Smith's testimony, evidence supporting Smith's version of events, and Petitioner's fingerprint on the weapon.

---

[1] Petitioner did not advance a self defense theory at trial, and the manner in which the victims were found – neither had a weapon, both were slumped on a couch, "Cotter still had his sunglasses in his hand, and Turner had a soda bottle between his legs and a lighter in his hand" – strongly suggests they were not threatening to kill Petitioner at the time of their deaths.

Petitioner was represented by Donna Anthony at trial. David Dykas was originally slated to serve as her second chair and conduct the direct and cross examinations of some of the witnesses. On the first day of trial, Anthony announced that she would be assisted by Shane Voyles because Dykas had accepted a position with the Howell County Prosecutor's Office the previous week. Dykas had told Anthony he would "feel uncomfortable" participating in the trial even though he was not scheduled to begin working for the prosecutor's office until later in the month. The Howell County Prosecutor, Michael Hutchings, was the second chair for the prosecuting team; the lead prosecutor was Michael Hendrickson from the Missouri Attorney General's Office. Anthony represented that she had discussed the matter with Petitioner and he was "fine with it." Upon questioning from the trial judge, Petitioner indicated he understood what was happening, was "concerned," but "really didn't have much to say about it."

Petitioner was convicted on May 11, 2001. Dykes started working in the child support enforcement unit for the prosecutor's office on May 29. He did not discuss the case with anyone from the prosecutor's office after accepting the position.

On June 4, Anthony filed a Motion for New Trial, arguing (among other things) that the trial court had erred in failing to disqualify the Howell County Prosecutor's Office and failing to inquire further into that office's hiring of Dykas.

## II. DISCUSSION

### A. Overview Regarding Procedural Default

Respondent contends Petitioner's claims were procedurally defaulted because he failed to raise them on direct appeal or in his postconviction proceeding.[2] The Court

---

[2]The only claims asserted in Petitioner's amended motion for postconviction relief involved counsel's actions during jury selection. Neither of these claims are raised in this proceeding, and none of the claims asserted in this proceeding were raised in state court.

2

provided Petitioner with an opportunity to file a Traverse, and he took advantage of this opportunity.  However, Petitioner's Traverse does not directly respond to Respondent's arguments; instead, it speaks in generalities about legally recognized grounds for excusing a procedural default but never specifically applies them to this case.

To avoid a procedural default, the habeas petitioner must fairly present his claim to the state courts; that is, he must present the same facts and legal theories in state court that he later presents to the federal courts.  Morris v. Norris, 83 F.3d 268, 270 (8th Cir. 1996).  In addition, it is not enough for Petitioner to simply raise the arguments; they must be raised in a manner that complies with state law.  Failure to do so constitutes a procedural default.  Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998).

"Unless a habeas petitioner shows cause and prejudice, a court may not reach the merits of . . . procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." Sawyer v. Whitley, 505 U.S. 333, 337-39 (1992) (citations and emphasis omitted).  "In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court.  Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel." McCleskey v. Zant, 499 U.S. 467, 493-94 (1991) (internal citations omitted).

Apart from a showing of cause and prejudice, the procedural bar may be avoided if Petitioner can demonstrate he was the victim of a fundamental miscarriage of justice. "To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence." Schlup v. Delo, 513 U.S. 298, 321 (1995).

> [A] petitioner who raises a gateway claim of actual innocence must satisfy a two-part test.  First, the petitioner's allegations of constitutional error must be

supported with new reliable evidence that was not presented at trial. Second, the petitioner must establish that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The actual innocence exception requires review of procedurally barred, abusive, or successive claims only in the narrowest type of case--when a fundamental miscarriage of justice would otherwise result.

Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir. 1997) (en banc), cert. denied, 522 U.S. 1093 (1997).

A petitioner asserting a Schlup "gateway" claim must support his allegations with reliable evidence. Schlup, 513 U.S. at 324; McCoy v. Norris, 125 F.3d 1186, 1190 (8th Cir. 1997), cert. denied, 523 U.S. 1008 (1998); Battle v. Delo, 64 F.3d 347, 354 (8th Cir. 1995), cert. denied, 517 U.S. 1235 (1996). Allegations and speculations are insufficient. Weeks, 119 F.3d at 1352-53. The evidence must demonstrate his factual innocence of the crime. Embrey v. Hershberger, 131 F.3d 739, 741 (8th Cir. 1997) (en banc), cert. denied, 525 U.S. 828 (1998); Pitts v. Norris, 85 F.3d 348, 350-51 (8th Cir.), cert. denied, 519 U.S. 972 (1996). Examples of the proper type of evidence include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence . . . ." Schlup, 513 U.S. at 324. Evidence that can only impeach a witness is not the sort of evidence that qualifies as evidence of actual innocence under Schlup. Allen v. Nix, 55 F.3d 414, 417 (8th Cir.), cert. denied, 516 U.S. 1014 (1995) ("[T]he newly discovered evidence at issue in the present case is insufficient to establish that petitioner is actually innocent of first degree murder since Ratigen's testimony at best only tends to impeach Reimer's testimony and indirectly support petitioner's version of the facts."); see also Morris v. Dormire, 217 F.3d 556, 559 (8th Cir.), cert. denied, 121 S. Ct. 439 (2000) (citing Allen); Vega v. Johnson, 149 F.3d 354, 364 (5th Cir. 1998), cert. denied, 525 U.S. 1119 (1999) (new evidence must be "material, not merely cumulative or impeaching.").

Petitioner properly observes ineffective assistance of counsel may serve as grounds for excusing a procedural default, but he has not demonstrated that ineffective assistance of counsel existed. Petitioner's current claims revolve around claims of ineffective assistance of counsel, but these claims were defaulted because they were not presented in a postconviction motion presented to the state trial court. There is no

4

right to counsel in a state postconviction proceeding, Coleman v. Thompson, 501 U.S. 722 (1991); Burns v. Gammon, 173 F.3d 1089, 1092 (8th Cir. 1999), so any failure on counsel's part during that phase cannot qualify as ineffective assistance of counsel or, correspondingly, as cause and prejudice sufficient to excuse a procedural default.

### B.  Failure To Seek Continuance or Disqualification

Petitioner first argues Anthony should have asked the trial judge to disqualify the Howell County Prosecutor's Office from participating in the case or sought a continuance because that office hired the attorney second-chairing his defense. However, this claim of ineffective assistance has been defaulted because it was not presented to the state court in Petitioner's postconviction motion. Petitioner alleged trial error on direct appeal, but this is insufficient to preserve a claim of ineffective assistance of counsel that was not raised in a postconviction proceeding because it is a different legal theory.  Cf. Anderson v. Groose, 106 F.3d 242, 245 (8th Cir. 1997).

This claim would fail on the merits even if it had not been procedurally defaulted. A claim of ineffective assistance of counsel is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995), cert. denied, 517 U.S. 1214 (1996) (quoting Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992)).  This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions.  Id. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'"  Lawrence, 961

5

F.2d at 115 (quoting Strickland, 466 U.S. at 694).

Id. Failure to satisfy both prongs is fatal to the claim. Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); see also DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000). "An ineffective assistance of counsel claim is a mixed question of law and fact." McReynolds v. Kemna, 208 F.3d 721, 723 (8th Cir. 2000).

The failure to seek a continuance did not prejudice Petitioner because there is no reason to believe the outcome of the proceedings would have been different. Moreover, Petitioner has not identified anything that happened (or did not happen) due to the replacement of the second chair. Without any indication Anthony's performance was deficient, her failure to seek a continuance cannot constitute ineffective assistance.

The failure to request disqualification of the Howell County Prosecutor's Office did not constitute ineffective assistance because the request would not likely have been honored. At the time of trial, Dykes did not work for the prosecutor's office. Dykes did not work on the case for the prosecutor, nor did he discuss the case with the prosecutor's office after accepting the position. Furthermore, to the extent Petitioner contends Anthony should have relied on state law (as opposed to the Constitution)[3] to obtain the disqualification, his argument fails because the Missouri Court of Appeals found no error of state law. A request for disqualification on that basis would have failed, so there could be no prejudice from the failure to seek it.

---

[3]The legal basis for the disqualification Petitioner believes should have been sought is not identified.

6

B.  Ineffective Assistance of Counsel

Under a single heading, Petitioner sets forth fourteen separate allegations of ineffective assistance of counsel.  All of them have been procedurally defaulted because none of them were presented in his postconviction motion.  In addition, Respondent correctly observes most if not all of these claims lack sufficient specificity to permit meaningful consideration.  As also noted earlier, Petitioner was afforded an opportunity to file a Traverse; however, he did not clarify his claims.  Petitioner cannot demand a hearing to develop the claims; having failed to develop the factual predicates in the appropriate state proceedings, he cannot seek a hearing in this forum.  See Osborne v. Purkett, 411 F.3d 911, 915-16 (8th Cir. 2005); Cox v. Burger, 398 F.3d 1025, 1029 (8th Cir. 2005).

*1.*

Petitioner contends his attorney was ineffective for failing to object to testimony against him that he alleges could have been procured only if Dykes provided information to the prosecution.  Petitioner has not identified the testimony in question, nor has he explained how he knows this unidentified information was the subject of communications between Dykes and the prosecutor.

*2.*

Petitioner complains that his attorney (presumably, Anthony) refused to take his phone calls and failed to discuss the case with him prior to trial.  The only topic Petitioner indicates he wished to discuss with counsel but could not was the need for a "more thorough crime scene investigation."  However, he has not indicated what such an investigation would have revealed, nor has he indicated any other matters that he was precluded from discussing with counsel.  Therefore, Petitioner cannot demonstrate prejudice.

7

Case 6:06-cv-03092-ODS   Document 10   Filed 06/12/06   Page 7 of 13

*3.*

Petitioner contends his attorney failed to interview witnesses that would have supported his testimony that Smith killed the two men. Petitioner has not identified these individuals, provided any reason to believe counsel knew of these alleged witnesses, or provided any indication of what they would say if called to testify. See Saunders v. United States, 236 F.3d 950, 952-53 (8th Cir. 2001) (discussing similar issues in federal postconviction proceeding); Whitmore v. Lockhart, 8 F.3d 614, 621 (8th Cir. 1993). This failure presents an independent reason (in addition to the procedural default) for rejecting his claim.

*4.*

Petitioner argues his attorney should have called rebuttal witnesses who would have testified Smith washed his hands after the time of the murder (which, apparently, would explain the absence of gunshot residue on Smith's hands). As with the previous claim, Petitioner has not identified the individuals he believes should have testified or the basis for counsel's knowledge of the witnesses' existence.

*5.*

Petitioner complains his attorney failed to impeach Smith and Trooper Kirby Thompson with their depositions. Petitioner has not identified the "impeachable" testimony or the portions of the witnesses' depositions that could have been used to impeach them, so Petitioner has cannot establish the subject matter and value of such impeachment. This (in addition to the procedural default) is fatal to Petitioner's claim.

*6.*

8

Petitioner faults counsel for failing to prepare an edited version of a crime scene tape, contending the version introduced by the prosecution contained "inflammatory and inadmissible evidence." Petitioner theorizes that, if faced with an alternative tape edited in the manner he describes, the trial court would have disallowed the prosecutor's tape. Petitioner has not explained what portions of the tape were inflammatory and inadmissible, leaving no basis for crediting this claim.

*7.*

On direct appeal, Petitioner challenged the trial court's denial of his motion to suppress his confession. The Missouri Court of Appeals noted the claim had not been preserved with an objection at trial, so it confined its review to a search for plain error. Petitioner now argues counsel provided ineffective assistance when she failed to object at trial.

This claim fails not only because it was defaulted, but because review of the record reveals no reason to believe heightened review by the Missouri Court of Appeals would have affected that court's analysis or conclusions. The issues Petitioner raised in connection with his statements consisted of claims that (1) he invoked his right to counsel, (2) his attorney called the investigating officer on the telephone and asserted Petitioner's rights, (3) his attorney's request to talk to Petitioner on the phone was denied, and (4) Petitioner was not told his attorney had called. The first issue involves a credibility determination, and on this point the trial court was presented with a waiver signed by Petitioner and an audiotape of Petitioner's statement. "Ordinary" review would not have resulted in a reversal of the trial court's determination. The latter three arguments all fail as a matter of law under any standard of review. Counsel cannot assert a client's Miranda rights because those rights are personal, belonging to the interviewee exclusively. The failure to allow counsel to talk to Petitioner on the phone or tell Petitioner his attorney called has no bearing on his waiver's validity. Moran v. Burbine, 475 U.S. 412, 421-26 (1986).

9

*8.*

Petitioner argues his attorney should have objected to the timing of lunch and other breaks because they "allowed Smith to compose himself and be coached by prosecutors about his prospective testimony." Such an objection would have been frivolous and he failure to assert it does not violate <u>Strickland</u>'s performance prong. In addition, Petitioner does not explain how the objection, even if granted, would have resulted in a different outcome.

*9.*

Petitioner contends telephone records would have established the time certain phone calls were made, thereby substantiating his testimony and discrediting Smith's. In addition to failing to advance this claim in the state postconviction proceeding, Petitioner has not provided the records in question. Consequently, there is no basis for finding Petitioner was prejudiced by counsel's failure to introduce the records.

*10.*

Petitioner complains that his attorney failed to arrange for a ballistics expert to testify in support of his defense. The problem is: Petitioner has provided no indication a ballistics expert could have testified in support of his defense. Without such an indication, there is no basis for concluding <u>Strickland</u>'s prejudice prong was violated.

*11.*

In an argument similar to the preceding one, Petitioner contends counsel should have retained crime scene experts to investigate such matters as fingerprints and blood. Once again, Petitioner has provided no grounds allowing a court to conclude the prejudice has been established.

10

*12.*

Petitioner contends counsel should have challenged Smith's testimony about the placement of furniture at the crime scene. In addition to defaulting this claim, Petitioner provides no basis for concluding (1) such impeachment was possible or (2) such impeachment was so germane to the case that prejudice could be established.

*13.*

Petitioner claims the results of the gunshot residue test (apparently, one conducted by law enforcement) should have been shown to an independent expert, who could have used the results to establish gunshot residue was on Smith's hands but not on Petitioner's. The Court cannot fathom how this could be done, and Petitioner has not identified an expert capable of providing such testimony.

*14.*

Finally, Petitioner contends his attorney provided ineffective assistance in her advocacy regarding the trial court's responses to notes from the jury. He contends the jury's request for documents and transcripts should have been honored.

The jury's first note requested a copy of the Miranda waiver Petitioner signed. This request was honored. Tr. at 814-15. The jury's second note asked to re-hear the taped confession and for a transcript of the confession. Petitioner's attorney agreed the transcript was not evidence but merely an aid; furthermore, she regarded allowing the jury to rehear the tape as comparable to allowing the jury to rehear a witness' testimony and for that reason opposed it. TR. at 816-17. The jury's third note indicated a page was missing from a different transcript that had been provided; it is not clear what deposition is being referred to. Both sides agreed the missing page would not be supplied. Tr. at 820.

As with the other claims, this one has been defaulted. Counsel may have had a strategic reason, based on her professional judgment, for not wanting the jury to hear the confession again. The record does not reflect this, but Petitioner did not take his opportunity to develop the matter in state court. Similarly, the record provides no indication about the nature or contents of the missing "page eleven." Petitioner's claim fails.

### C. New Evidence of Innocence

Petitioner contends he has new evidence of his innocence. The first piece of evidence is the testimony of Vince Moody, who would testify that after the trial Smith admitted to him that he (Smith) killed Cotter and Turner. The second piece of evidence is the testimony of Gene Gietzen, a forensic expert Petitioner represents is "ready to examine the crime scene and make [his] findings available to the motion court." Petitioner anticipates Gietzen's "conclusions would be strongly supportive of his theory of defense and constitute new evidence of innocence." No report or affidavit from either Moody or Gietzen has been supplied.

Newly discovered evidence of innocence may serve two functions. First, as noted earlier, it may demonstrate a fundamental miscarriage of justice sufficient to overcome the procedural bar. Second, it may (at least theoretically) be used to support a free-standing claim for relief. Petitioner does not clearly identify the purpose for which he advances the argument, so the Court will consider both.

With respect to the latter claim, Respondent relies on Herrera v. Collins, 506 U.S. 390 (1993), to contends a claim of actual innocence cannot serve as a basis for issuing a writ. The law in this circuit is not so clear. Four months after Schlup v. Delo was decided, the Eighth Circuit cited it for the proposition that a free-standing claim of actual innocence is cognizable and relief can be granted only if the new facts "'unquestionably establish [the petitioner's] innocence.'" Allen v. Nix, 55 F.3d 414, 417 (8th Cir.), cert. denied, 516 U.S. 1014 (1995) (quoting Schlup, 513 S. Ct. at 317). Later, in Meadows v. Delo, 99 F.3d 280 (8th Cir. 1996), the Eighth Circuit was again presented with a free-

12

standing claim of actual innocence and, for that reason, explicitly declared that "reliance on Schlup is misplaced." 99 F.3d at 283. Instead, the Meadows Court relied on Herrera to hold that the "claim of innocence based on newly discovered evidence is not cognizable on habeas review." Id. In Cornell v. Nix, 119 F.3d 1329 (8th Cir. 1997), the Eighth Circuit relied on Allen and subjected a free-standing claim of actual innocence to the "unquestionable innocence" standard. 119 F.3d at 1334. As recently as March 2003, the Eighth Circuit continued to consider freestanding claims of actual innocence on their merits – although the showing must be extraordinarily high in order to obtain relief. Noel v. Norris, 322 F.3d 500, 504 (8th Cir. 2003).

Resolving the issue is actually rather easy. If the freestanding claim is not cognizable, then relief cannot be granted. Even if it is cognizable, relief cannot be granted if, at a minimum, the "lower" standard Schlup established for gateway claims has not been satisfied. Here, Petitioner points to two pieces of "new" evidence. The first one does not meet the standards established in Schlup, and the second one does not even really exist; Petitioner merely "believes" an expert will find evidence to support his theory. Regardless of whether Petitioner's claim of actual innocence is advanced as a reason for excusing his procedural defaults or as an independent ground justifying issuance of a Writ, the claim has not been satisfactorily supported and is rejected.

## III. CONCLUSION

For these reasons, the Petition for Writ of Habeas Corpus is denied.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: June 12, 2006                       UNITED STATES DISTRICT COURT